UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH H. MASRI,

                         Plaintiff,

            -against-

SHIMEN LIEBOWITZ, et al.,

                         Defendants.

1:24-CV-1284 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Joseph H. Masri, whose mailing address is located in Brooklyn, Kings County, New York, and who alleges that, during the alleged events, he resided in Brooklyn, appears *pro se*. He filed this action asserting civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), claims of federal constitutional violations and conspiracy under 42 U.S.C. § 1983, claims of conspiracy to violate his right of equal protection under the law under 42 U.S.C. § 1985(3), as well as claims under state law. Plaintiff sues the following defendants: (1) Support Magistrate Barbara O. Afriyie, of the New York Family Court, Orange County ("Orange County Family Court"); (2) Family Court Judge Christine P. Krahulik, also of the Orange County Family Court; (3) Esther Masri ("Esther"), of Monroe, Orange County, New York, who appears to be either Plaintiff's estranged wife or ex-wife; (4) Maria Patrizio, Esq., an attorney who was allegedly appointed to represent Plaintiff in his Orange County Family Court proceedings; (5) Shimen Liebowitz, of Monroe, whom Plaintiff describes as a "known criminal," and who has allegedly threatened Plaintiff with murder (ECF 1, at 2, 11); (6) Aharon Goldberg, also of Monroe, whom Plaintiff also describes as a "known criminal," and who has also allegedly threatened Plaintiff with murder (*id.*); (7) Binyamin Gottlieb, of Airmont, Rockland County, New York; (8) Rabbi Avrum Eckstein ("Avrum"), of Brooklyn; (9) Duvid Eckstein ("Duvid"),

of Monroe, whom Plaintiff alleges "assumed the role of a community leader," and whom he seems to allege is a son of Defendant Avrum (*id.* at 9); (10) Shlomo Hersh Eckstein ("Shlomo"), also of Monroe, whom Plaintiff seems to allege is also a son of Defendant Avrum; (11) Mordecai Yankel Saal ("Mordecai"), of Monroe, whom Plaintiff alleges "was . . . deeply involved in [a] criminal murder plot, organizing and facilitating the financial transactions necessary for the scheme" (*id.* at 8); (12) Carlos Shalom Saal ("Carlos"), of Monroe, whom Plaintiff alleges "intentionally planned and executed car accidents[,] . . . [and] was also deeply involved in [a] criminal murder plot, organizing and facilitating the financial transactions necessary for the scheme" (*id.*); (13) Eric Ole Thorson, Esq., of New City, Rockland County, New York, whom Plaintiff alleges is an attorney who has represented Defendant Esther; (14) "Paul N .Weber, Esq. Office Appointments," of Cornwall, Orange County, New York, whom the Court understands to be Paul N. Weber, Esq., and whom Plaintiff alleges is an attorney who was appointed to represent him for proceedings in the New York Supreme Court, Orange County ("Orange County Supreme Court"); (15) Adam Paltrowitz, Esq., of Goshen, Orange County, New York, whom Plaintiff alleges is an attorney who "serv[ed] as the attorney for the son [and] was aware of the murder plot but chose to disregard it" (*id.* at 7); (16) Justice Catherine M. Bartlett, of the Orange County Supreme Court; and (17) unidentified defendants "John Does 1 through 20," "Jane Doe 1 through 10," and "ABC Corporations 1 through 10." Plaintiff seeks damages, injunctive relief, and declaratory relief.

By order dated February 21, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead his claims under state

law to allege facts, in an amended complaint, showing why the Court has diversity jurisdiction to consider those claims.[1]

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

---

[1] The Court notes that, with respect to his claims under state law, Plaintiff invokes both the court's diversity jurisdiction and supplemental jurisdiction. (ECF 1, at 3.)

reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.*
But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action,"
which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After
separating legal conclusions from well-pleaded factual allegations, the Court must determine
whether those facts make it plausible – not merely possible – that the pleader is entitled to relief.
*Id.* at 679.

## BACKGROUND

Plaintiff's complaint is difficult to understand. Plaintiff asserts that he "brings this action
against two distinct groups of [d]efendants for their involvement in a RICO enterprise: first
[Defendants Afriyie, Patrizio, Krahulik] and [a]dditional [l]awyers [and], second [Defendants
Liebowitz and Goldberg,] who were indicted and [who] served jail time."[2] (ECF 1, at 1.) He also
alleges that Defendants Afriyie, Patrizio, and the "additional lawyers" "colluded to manipulate
legal outcomes and exploit [him] through various unlawful acts. Their coordinated activities
within the legal system, marked by extortion, fraud, and abuse of process[] have caused
significant harm to [his] legal rights, personal well-being, and financial status." (*Id.* at 2.)
Plaintiff further alleges that he "faces a continuous and direct threat of murder from" Defendants
Liebowitz and Goldberg. (*Id.*) These defendants have allegedly "demonstrated their capacity for
violent and criminal behavior . . . [and] continue[] to pose a significant threat to . . . Plaintiff's
safety and life." (*Id.*)

In addition, Plaintiff alleges that his "complaint is centered on the decision made by"
Defendant Bartlett on January 13, 2017, in the Orange County Supreme Court, "which serves as

---

[2] Plaintiff does not specify, in that section of the complaint, what the other defendants
named in this action did or did not do with respect to alleged RICO violations.

4

the foundation for the subsequent actions of the Family Court judges." (*Id.* at 5.) "The gravity of [Plaintiff's] grievance against this adjudication is underscored by its timing and context, as it coincided with a deeply troubling murder trial [in an unspecified federal court]."[3] (*Id.*) "Despite the federal court's explicit acknowledgement of the conspiracy's severity and its ongoing threat, [Defendant Bartlett's Orange County Supreme Court] decision seemingly overlooked the substantial evidence and warnings presented."[4] (*Id.* at 6.) Plaintiff asserts that Defendant Bartlett's "oversight in this matter, which disregards the critical context provided by a parallel federal conviction, underscores a concerning disregard for the safety and justice owed to" him. (*Id.*) Plaintiff seeks, among other relief, "a rigorous examination of [Defendant's Bartlett's] decision, which not only contradicts the federal court's findings[,] but also imperils . . . [his] safety by ignoring the documented threats and the broader implications of the murder plot." (*Id.*) He also asserts that the "Family Court's reliance on [Defendant] Bartlett's order to enforce its proceedings further compounds the issue, as it perpetuates the potential disregard for [his] safety and justice." (*Id.*) Plaintiff further asserts that "[i]t is crucial that the enforcement of this [Orange County Supreme Court] order by the Family Court be scrutinized for its adherence to justice and the well-being of those it affects, taking into full account the broader judicial context and the serious allegations that have surfaced."[5] (*Id.*) He states that his complaint "underscores the

---

[3] Plaintiff does not provide the specifics of Defendant Bartlett's January 13, 2017 ruling, or whether it had anything to do with him, other than stating that the coinciding murder trial in an unspecified federal court "resulted in . . . [that] federal court's determination that highlighted the severe and imminent danger posed by a murder conspiracy, leading to significant incarceration for individuals intent on murdering" him. (ECF 1, at 5.)

[4] Plaintiff alleges that such warnings included "advisories from [Defendant Esther's] legal representation and the postponement of a vacation due to the grave allegations involving [Defendant Esther's] collusion with the conspirators." (ECF 1, at 6.)

[5] Plaintiff does not specify what those allegations are.

necessity for a reassessment of the Family Court's reliance on th[e] [Orange County Supreme Court's] order, with an urgent call for a judicious and informed response to the complexities of the case at hand."[6] (*Id.*)

Plaintiff alleges that Defendant Afriyie "manipulate[d] legal processes for personal and [e]nterpise gain, including [by] issuing biased judgments and obstructing justice." He also alleges that Defendant Patrizio, an attorney who appears to have represented him in proceedings before the Orange County Family Court, colluded with Defendant Afriyie and "engag[ed] in fraudulent legal practices, such as misrepresenting clients and deliberately prolonging legal disputes." (*Id.*)

Plaintiff seems to allege that, with respect to his Orange County Family Court proceedings before Defendant Krahulik, that judge appointed Defendant Weber as Plaintiff's counsel in proceedings before that court; Weber allegedly "disclosed to [Plaintiff] that he carried a firearm . . . [because of] his former role as a detective. This detail was ostensibly the rationale for [Defendant Krahulik's] decision to have him represent [Plaintiff and to] . . . mitigate any concerns for [Plaintiff's] personal safety. . . ." (*Id.* at 7.) Plaintiff states, however, that "this narrative conceals a deeper issue of neglect and abuse by both [Defendant Weber] and the judicial system." (*Id.*) He also states that the "murder plot . . . was egregiously disregarded and omitted from consideration in the judicial proceedings. This oversight . . . undermines the integrity of [his] legal representation . . . [and] also highlights a profound failure of the court to address and engage with the essential elements of" his Family Court matter. (*Id.*) Plaintiff further

---

[6] Plaintiff does not specify what those complexities are either.

states that Defendant Paltrowitz, "the attorney for the son, was aware of the murder plot[,] but chose to disregard it."[7] (*Id.*)

Plaintiff alleges that Defendant Carlos "[h]as intentionally planned and executed car accidents. He was also deeply involved in this criminal murder plot, organizing and facilitating the financial transactions necessary for the scheme." (*Id.* at 8.) Plaintiff further alleges that Defendant Mordecai "was also deeply involved in this criminal murder plot, organizing and facilitating" in the same manner as Defendant Carlos.

Plaintiff asserts that "[t]he criminal conspiracy was orchestrated and executed by two individuals[,] both . . . authoritative figures: [Defendant Avrum], who held the position of a rabbi, and [Defendant Duvid], who assumed the role of a community leader." (*Id.* at 9.) He also asserts that, like Defendants Carlos and Mordecai, Defendants Avrum and Duvid "were deeply involved in this criminal murder plot, organizing and facilitating the financial transactions necessary for the scheme." (*Id.*) Plaintiff further asserts that Defendant Avrum and his unidentified wife "falsely assumed a leadership role over a community group, masquerading as champions for women oppressed by their spouses. This facade is asserted to be a calculated strategy to mislead, manipulate, and exert control over group members." (*Id.*) He alleges that Defendant Avrum has an "unhealthy level of control over [his group's] members, akin to a cult," and that he has "engaged in deliberate interference in the personal affairs of community members, including" Plaintiff's personal affairs. (*Id.*) Plaintiff further alleges that this interference included interventions in community members' "marital relationships, particularly evidenced in . . . Plaintiff's efforts to reconcile with" Defendant Esther. (*Id.*) He states that an

---

[7] Plaintiff does not indicate whether Defendant Paltrowitz is an attorney that has been appointed by the Family Court to represent Plaintiff's son during Plaintiff's Family Court proceedings, or someone else's son.

example of such an intervention was when Defendant Avrum "orchestrated a fabricated emergency. This ruse, involving an urgent call to [Defendant Esther] under false pretenses, served as a tactical maneuver to derail . . . Plaintiff's marital reconciliation efforts." (*Id.* at 9-10.)

Plaintiff states that on May 19, 2016, Defendant Thorsen, an attorney hired by Defendant Esther, "publicly slandered Plaintiff in front of over three hundred people. . . . Thorsen, as part of a fundraising campaign, told the audience that Plaintiff was 'a bad father,' 'a bad Jew,' and 'an embarrassment' to the community." (*Id.* at 10.) Plaintiff also states that Thorsen "told the audience to no longer hire, speak to, or house Plaintiff, as a means of forcing Plaintiff to 'act like a good father, act like a devoted Jew.'" (*Id.*)

Plaintiff asserts that Defendant Patrizio, an attorney, was appointed to represent him during proceedings before the Orange County Family Court, and that Defendant Patrizio "was deeply involved in the planning and activities of the [F]amily [C]ourt case, in a manner that suggests complicity and negligence." (*Id.*) He also states that, on November 24, 2023, "during a phone conversation with [him], [Defendant] Patrizio provided a pointed critique of the legal proceedings, particularly concerning the child support petition filed by [Defendant Esther]. [Defendant Patrizio] expressed skepticism about the petition's sincerity and insinuated that [Defendant Esther] might be complicit with known criminals [Defendants Leibowitz and Goldberg]." (*Id.* at 10-11.) Plaintiff alleges that Defendant Patrizio "was complicit in mismanaging the [F]amily [C]ourt proceedings." (*Id.* at 12.) Plaintiff also alleges that, on November 27, 2023, Defendant Patrizio appeared before Defendant Afriyie, in the Orange County Family Court, where Patrizio "acknowledged [Plaintiff's] status as a victim of a kidnapping and murder plot linked to efforts by [Defendant Esther] to obtain a Jewish divorce, as evidenced by documents from the United States District Court for the Southern District of New

York."[8] (*Id.*) He further alleges that, during her appearance before Defendant Afriyie, Defendant

Patrizio "advocated for his safety" and requested that he appear virtually with respect to a then-

upcoming December 1, 2023 proceeding, but she "seemed to downplay the seriousness of the[]

threats and connection to the criminal elements involved." (*Id.* at 12-13.) Plaintiff states "that

[Defendant] Patrizio's conduct in this matter reflects a broader pattern of misconduct and

complicity within the [F]amily [C]ourt proceedings[,] . . . including a failure to adequately

protect [Plaintiff's] interests and safety." (*Id.* at 13.)

Plaintiff alleges no facts about Defendant Gottlieb, Defendant Shlomo (other than that he

is a son of Defendant Avrum), or about the other unidentified defendants. He seeks damages,

injunctive relief, and declaratory relief.[9]

## DISCUSSION

**A.    Defendants Afriyie, Krahulik, and Bartlett**

**1.    Claims for damages and injunctive relief in these defendants' respective individual capacities**

The Court must dismiss Plaintiff's claims for damages and injunctive relief under 42

U.S.C. §§ 1983 and 1985, as well as his civil RICO claims for such relief, against Defendants

Afriyie, Krahulik, and Bartlett, in their respective individual capacities. Judges, such as these

defendants, are absolutely immune from suit for damages in their individual capacities for any

---

[8] Plaintiff does not specify any associated matter that took place within this court.

[9] This is not the first time that Plaintiff has asserted claims, in this court, arising from the allegations asserted in the present complaint, nor is it the first time that the court has adjudicated those claims. *See Masri v. Thorsen*, No. 7:17-CV-4094 (KMK), 2020 WL 1489799 (S.D.N.Y. Mar. 27, 2020) (granting motions to dismiss of Defendants Thorsen and Esther, and of Zion Saal, as to Plaintiff's claims of conspiracy to deprive Plaintiff of his constitutional rights, and of slander, slander per se, libel, libel per se, and intentional infliction of emotional distress, but dismissing those claims without prejudice and granting Plaintiff leave to replead); *Masri*, ECF 7:17-CV-4094, 61 (S.D.N.Y. July 30, 2020) (dismissing action without prejudice for failure to prosecute).

actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9-12 (1991) (claims under Section 1983); *Deem v. Dimella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (claims Sections 1983 and 1985); *Festinger v. Snitow Kamintesky Rosner & Snitow, LLP*, No. 20-CV-9784 (PGG) (JW), 2022 WL 901660, *22 (S.D.N.Y. Mar. 28, 2022) (civil RICO claims); *Komatsu v. City of New York*, No. 20-CV-6510 (LLS), 2020 WL 8641274, at *3 (S.D.N.Y. Oct. 22, 2020) (claims under 42 U.S.C. §§ 1983, 1985, 1986, and under civil RICO), *aff'd sub nom.*, *Komatsu v. Cubesmart*, No. 20-3676, 2021 WL 6060603 (2d Cir. Dec. 20, 2021) (summary order); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, No. 3:17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (claims under Sections 1983 and 1985, as well as civil RICO claims). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in the absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 210 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff seems to assert claims for monetary damages and injunctive relief under Section 1983, Section 1985, and/or under the civil RICO provision, against Defendants Afriyie, Krahulik, and Bartlett, arising from these judges' alleged actions and/or rulings in proceedings before them in the Orange County Family Court and in the Orange County Supreme Court, respectively. Plaintiff, however, fails to allege any facts showing that, in taking those actions and/or making such rulings, these defendants acted beyond the scope of their respective judicial responsibilities or outside their respective jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Defendants Afriyie,[10] Krahulik, and Bartlett, all New York State court judges, for "acts arising out of, or related to, individual cases before [them]," *Bliven*, 579 F.3d at 210, the doctrine of judicial immunity applies to Plaintiff's claims under Section 1983, Section 1985, and the civil provision of RICO against these defendants. The Court therefore dismisses these claims for damages and injunctive relief against these defendants,[11] in their respective individual capacities, under the doctrine of judicial immunity, because Plaintiff seeks monetary relief from defendants who are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and as these

---

[10] New York Family Court Support Magistrates, such as Defendant Afriyie, as New York State judicial officers, enjoy judicial immunity, when presiding over child-support proceedings. *See, e.g.*, *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order). Plaintiff's abovementioned claims against Defendant Afriyie appear to arise from her actions and/or rulings in Family Court child-support proceedings involving Plaintiff and Defendant Esther. (*See* ECF 1, at 10-11.)

[11] The amendment to Section 1983, allowing for injunctive relief against a judge only if a state court declaratory decree was violated or state court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against these defendants. This is so because Plaintiff can seek review of these defendants' actions and/or rulings in the New York State appellate courts. *See* N.Y. Family Court Act §§ 439(e), 1112; N.Y.C.P.L.R. § 5602(a)(1), (b)(2); *see generally Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

claims are frivolous, § 1915(e)(2)(B)(i); *see Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011)

("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of

[the IFP statute].").

### 2.    Claims against these defendants in their respective official capacities

To extent that Plaintiff asserts these claims against Defendants Afriyie, Krahulik, and

Bartlett, in their respective official capacities as New York State judicial officers, the Court must

also dismiss these claims for damages because they seek monetary relief from defendants that are

immune from such relief, and for lack of subject matter jurisdiction, under the doctrine of

Eleventh Amendment sovereign immunity. *See* § 1915(e)(2)(B)(iii); Fed. R. Civ. 12(h)(3);

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020), *abrogated on

other grounds*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). While the

Eleventh Amendment normally bars claims for relief against state officers, including state

judges, such as the abovementioned defendants, in their respective official capacities, *see id.*, it

does not preclude suits against state officers, in their official capacities, in which *prospective*

injunctive relief is sought. *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see Green v. Mansour*,

474 U.S. 64, 68 (1985). To the extent that Plaintiff seeks *retrospective* injunctive and declaratory

relief against the abovementioned defendants, in their respective official capacities, however, the

Court dismisses those claims, for lack of subject matter jurisdiction, under the doctrine of

Eleventh Amendment sovereign immunity. *See* Fed. R. Civ. P. 12(h)(3).

### 3.    Claims seeking to intervene in ongoing state court proceedings

This Court may also not intervene in any child-custody, child-support, or divorce

proceedings that are pending in the Orange County Family Court or in the Orange County

Supreme Court in which Plaintiff is a party. In *Younger v. Harris*, 401 U.S. 37 (1971), the

Supreme Court of the United States held that a federal court may not enjoin a pending state

criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of this *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("*Sprint*"). It applies to claims for injunctive relief and declaratory relief sought, in the federal court, that would cause that court to intervene in any of those types of state court proceedings. *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000). Courts have held that pending state court child-custody and child-support proceedings, as well as state court divorce proceedings, involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See Falco v. Justices of the Matrimonial Parts of the Supreme Court of Suffolk Cnty.*, 805 F.3d 425, 417 (2d Cir. 2015) ("Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings – a subject in which 'the states have an especially strong interest.'"); *Perso v. Perso*, No. 19-CV-2858, 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13, 2019) (child custody); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (divorce and child support); *Gravagna v. Eisenpress*, No. 19-CV-0700 (CM), 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019) (child custody and child support).

To the extent that Plaintiff asks this Court to intervene in any his pending state court child-custody, child-support, and/or divorce proceedings, he has not alleged any facts showing that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred

with respect those proceedings. Thus, in addition to the other reasons the Court dismisses Plaintiff's federal-law claims for injunctive and declaratory relief against Defendants Afriyie, Krahulik, and Bartlett, the Court dismisses such claims under the *Younger* abstention doctrine.

### 4.      Claims seeking to overturn final state court decisions

To the extent that Plaintiff alternatively asks this Court to overturn a final order or judgment issued in his concluded state court child-custody, child-support, and/or divorce proceedings, in which he was unsuccessful as to the relief he sought in any of those proceedings, the *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to a child-custody, child-support, or divorce proceeding. *See Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013) (discussion in the context of child support); *Sticesen v. Fay*, 783 F. App'x 26, 28 (2d Cir. 2019) (summary order) (same as to child custody); *Cohen v. New York*, 481 F. App'x 696, 697 (2d Cir. 2012) (summary order) (divorce); *Legister v. Radowitz*, No. 1:20-CV-9330 (LLS), 2020 WL 7405672, at *2-3 (S.D.N.Y. Dec. 16, 2020) (child support). District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district

court proceedings commenced. *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Inasmuch as Plaintiff criticizes any final decisions of the Orange County Family Court and/or the Orange County Supreme Court in an effort to request that this Court overturn any of those courts' final decisions, the *Rooker-Feldman* doctrine bars this Court from granting him such relief. The Court therefore alternatively dismisses any claims against Defendants Afriyie, Krahulik, and Bartlett that essentially challenge any of those judge's final decisions arising from Plaintiff's concluded and unsuccessful child-custody, child-support, and/or divorce proceedings in the Orange County Family Court and/or the Orange County Supreme Court, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## B.      Claims under civil RICO

Plaintiff attempts to assert claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting Section 1962(a)-(c)). Such a plaintiff must

also "allege that he was 'injured in his business or property *by reason* of a violation of section 1962.'" *Id.* (quoting Section 1964(c)) (italics in original).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45.

Civil RICO claims must be brought against a person "in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Because Plaintiff alleges that Defendant Avrum resides in Brooklyn, Kings County, New York (ECF 1, at 4), which is within the Eastern District of New York, *see* 28 U.S.C. § 112(c), the Court dismisses such claims against Defendant Avrum, in the interests of justice, as brought in the wrong venue, *see* 28 U.S.C. § 1406(a).

Notwithstanding whether this court is proper venue for Plaintiff's civil RICO claims against any of the defendants or whether Defendants Afriyie, Krahulik, and Bartlett are immune from suit, in their individual capacities, under the doctrine of judicial immunity, from these claims, Plaintiff fails to provide any facts that would support any claim under civil RICO – either a claim for civil enforcement or one of conspiracy – against any named defendant. Plaintiff's allegations as to these claims are conclusory, without factual support, and suggest that Plaintiff is merely dissatisfied with: (1) the rulings and/or actions of the Orange County Family Court as to child-support and/or child-custody proceedings in which he has participated in that court; (2) the

rulings and/or actions of the Orange County Supreme Court as to child-support, child-custody, and/or divorce proceedings in which he has participated in that court; (3) the quality of his legal representation in any of those types of proceedings; (4) the alleged actions of Defendants Esther and Thorson in the abovementioned state courts, and within the Jewish community group to which both Plaintiff and Esther appear to belong; (5) how his reputation may have suffered within the abovementioned community, and within society in general, as a result of the alleged actions and/or rulings of any of the abovementioned state courts and/or as a result of the alleged actions of Defendants Esther and Thorson; and (6) the abovementioned courts' alleged inaction as to threats to his safety and on his life. Thus, Plaintiff has not alleged facts sufficient to satisfy the pleading standards to state a civil RICO enforcement claim or a civil RICO conspiracy claim, as specified above. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted.[12] *See* § 1915(e)(2)(B)(ii).

## C.   Claims under 42 U.S.C. § 1983

To state a claim of federal constitutional violations under 42 U.S.C. § 1983, a litigant must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). "The traditional definition of acting under color of state law requires that the defendant . . . exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under

---

[12] The Court does not discount the seriousness of the alleged threats to Plaintiff's safety and on his life, and offers no opinion as to the merits of any non-frivolous claims under state law that Plaintiff may assert against those non-immune defendants who have injured him.

Section 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted). Private parties generally are not state actors, and therefore are not usually liable under Section 1983. *Sykes*, 723 F.3d at 406 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

A private party's actions can be considered state action in three situations: (1) when the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the private party (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private party's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision . . . when it has . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The State's "[m]ere approval of or acquiescence in the initiatives of a private party[,] [however,] is not sufficient to justify holding the State responsible for those initiatives." *Id.* at 1004-05.

Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's legal representation of a private person, however, does not constitute state action for the purpose of stating a claim under Section 1983 against that attorney, regardless of whether that attorney is

privately retained, court-appointed, or employed as a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981), and *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

To state a claim of conspiracy under Section 1983, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and unsupported assertions of a conspiracy will not suffice to state a claim on which relief can be granted. *See*, *e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

While Defendants Afriyie, Krahulik, and Bartlett are state actors, Plaintiff cannot pursue claims under Section 1983 against those defendants for the reasons discussed above. *See supra* at 9-15. As to Plaintiff's claims under Section 1983 against the remaining named and identified defendants, Plaintiff alleges no facts showing how any of those individuals, who all are alleged to be private individuals, including those who are alleged to be attorneys, acted as a state actor when he or she allegedly violated Plaintiff's federally protected rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against those remaining defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

In addition, notwithstanding the Court's dismissal of the abovementioned claims, with respect to Plaintiff's claims of conspiracy under Section 1983 against all of the named and identified individual defendants, Plaintiff alleges no facts that would suggest any conspiracy against him, by any of those defendants, to violate his federal constitutional rights. Plaintiff's allegations about such a conspiracy are conclusory and without specific factual detail; his allegations merely suggest dissatisfaction for reasons discussed previously in this order as to his civil RICO claims. *See supra* at 16-17. The Court, therefore, also dismisses Plaintiff's claims of conspiracy under Section 1983 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**D.    Claims under 42 U.S.C. § 1985(3)**

The Court must further dismiss Plaintiff's claims of conspiracy under 42 U.S.C. § 1985(3). To state such a claim, a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

As with claims of conspiracy under Section 1983, vague and unsupported assertions of a claim of conspiracy under Section 1985 will not suffice to state a claim upon which relief can be granted. *See*, *e.g.*, *Stoner*, 626 F. App'x at 296; *Wang*, 356 F. App'x at 517 (2d Cir. 2009).

Plaintiff's allegations about a conspiracy between at least some, if not all, of the named and identified defendants are conclusory, vague, and without detail. Plaintiff alleges nothing to

support claim of a racial or otherwise class-based conspiracy, for the purposes of depriving him

of equal protection of the laws, an overt act in furtherance of that conspiracy, and an injury to his

person or property or a deprivation of his rights or privileges as an American citizen. The Court

therefore dismisses Plaintiff's claims of conspiracy under Section 1985 for failure to state a

claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii); *Masri*, 2020 WL 1489799, at *8,

10 (granting the defendants' motion to dismiss for failure to state a claim, brought under Fed. R.

Civ. P. 12(b)(6), as to Plaintiff's claims under Section 1985(3) in his previous action, which arise

from what appear to be the same facts alleged in the present action, and holding that "[e]ven

construing [Plaintiff's] Amended Complaint liberally, Plaintiff fails to establish that Defendants

acted with class-based invidiously discriminatory animus, [as to his claims] under § 1985(3),

because his allegations related to discriminatory animus are conclusory," and that "Plaintiff has

not sufficiently alleged that Defendants acted with discriminatory animus in seeking to deprive

him of any constitutional right" (internal quotation marks and citation omitted)).

**E.      Claims under state law**

Plaintiff may be asserting additional or alternative claims under state law arising from the

events alleged above. For this reason, the Court will examine whether it can consider such claims

under its diversity jurisdiction or under its supplemental jurisdiction.

**5.      Diversity jurisdiction**

The original subject matter jurisdiction of the federal district courts is limited and is set

forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has

original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff

is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and

the defendants are citizens of different States and the amount in controversy exceeds the sum or

value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any

party or the court sua sponte, at any stage of the proceedings, may raise the question of whether

the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-

CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting

*Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir.

1983)); see Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526

U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own

initiative.").

      To establish the court's diversity jurisdiction, a plaintiff must first show that he and the

defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v.

Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original'

diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if

there is no plaintiff and no defendant who are citizens of the same State."). For diversity

purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as

the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or

she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232

F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has

but one domicile." *Id.* With respect to an action brought under the court's diversity jurisdiction,

the parties' state citizenship is established at the time of the commencement of the action. *See,

e.g.*, *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("Generally, in a diversity action, if

jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work

an ouster of jurisdiction."). The plaintiff must also allege to a "reasonable probability" that his or

her claims under state law are in excess of the sum or value of $75,000, the statutory

jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

While Plaintiff alleges that his mailing address is in Brooklyn, New York, he does not affirmatively state his state citizenship as of the filing of his complaint, though he seems to state that all of the defendants are citizens of the State of New York. Plaintiff therefore does not show that the parties are diverse. In addition, he does not allege facts sufficient to show that his claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional amount to invoke this court's diversity jurisdiction. Thus, to the extent that Plaintiff asserts any claims under state law under the court's diversity jurisdiction, the Court dismisses those claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead any claims that he may assert under state law in an amended complaint in which he alleges facts sufficient to show that the Court has diversity jurisdiction of those claims; he must allege: (1) what his state citizenship was at the time he filed his original complaint; (2) facts showing that he and the defendants named in his amended complaint were not, at the time of the filing of his original complaint, citizens of the same State; and (3) that his claims under state law exceed the sum or value of $75,000. [13]

---

[13] In 1990, in *American Airlines, Inc. v. Block* ("*American Airlines*"), the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted). Two years later, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992); *see id.* at 705 (allowing for the possibility that such an exception to jurisdiction could be extended to "elements of the domestic relationship even when the parties do not seek divorce, alimony, or

6.      **Supplemental jurisdiction**

A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In addition, "[i]n the absence of diversity jurisdiction, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to . . . [Section] 1367(c)(3)." *Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2021 WL 637974, at *5 (S.D.N.Y. Feb. 17, 2021). Having dismissed those of Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of his claims under state law.[14] *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

---

child custody"); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of Donohue's child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). More recently, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d at 621. Thus, notwithstanding whether this Court is considering this action under its original federal question or diversity jurisdiction, it must either abstain from considering, or lacks subject matter jurisdiction to consider, any request by Plaintiff to issue a divorce, child-custody, and/or child-support decision.

[14] The Court cannot decline to consider claims under state law if it determines, after an amendment, that it has original diversity jurisdiction to consider those claims. *See* § 1332(a).

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under state law against some of the defendants, under the court's diversity jurisdiction, the Court grants Plaintiff 30 days' leave to amend his complaint to detail such claims, including facts demonstrating that the Court has diversity jurisdiction to entertain them.

If Plaintiff does not file an amended complaint, as specified above, within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

**CONCLUSION**

The Court dismisses this action for the reasons set forth above. The Court, however, grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified in this order. If Plaintiff fails to file an amended complaint within the time allowed, and cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   April 15, 2024
         New York, New York

                                                    /s/ Laura Taylor Swain
                                                LAURA TAYLOR SWAIN
                                             Chief United States District Judge